**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

RAYMOND LEE CAVITT,      §
                                      §
             *Petitioner*,        §
                                        §
v.                                      §       CIVIL ACTION NO. H-16-3137
                                        §
LORIE DAVIS,               §
                                          §
             *Respondent*.      §

### MEMORANDUM OPINION AND ORDER

Petitioner, a state inmate proceeding *pro se*, filed this section 2254 habeas petition challenging his conviction and life sentence for sexual assault of a child. Respondent filed a motion for summary judgment (Docket Entry No. 33), to which petitioner filed a response (Docket Entry No. 35).

Having reviewed the motion, the response, the record, and the applicable law, the Court GRANTS the motion for summary judgment and DISMISSES this case for the reasons that follow.

### *Background and Claims*

Petitioner was convicted of sexual assault of a child in Harris County, Texas, and sentenced to life incarceration in October 2013. The conviction was affirmed on appeal, *Cavitt v. State*, 507 S.W.3d 235 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd), and the

Texas Court of Criminal Appeals refused discretionary review. Petitioner's application for state habeas relief was denied. *Ex parte Cavitt*, No. 5,496-15 (Tex. Crim. App. 2016).

Petitioner raises the following grounds for federal habeas relief:

1. Insufficiency of the evidence;

2. Ineffective assistance of trial counsel based on

   a. counsel's failure to present certain testimony;

   b. counsel's failure to inform him adequately of the advantages and disadvantages of testifying;

   c. counsel's failure to object to certain expert witness testimony;

   d. counsel's eliciting evidence of petitioner's prior convictions;

   e. counsel's failure to inform him of a plea offer;

   f. counsel's failure to challenge the indictment; and

   g. the cumulative effect of counsel's errors;

3. Prosecutorial misconduct in presenting perjured testimony;

4. Denial of a speedy trial.

5. Denial of due process caused by a defense witness's jail attire.

Respondent argues that these claims are without merit and should be dismissed.

### *Factual Background*

The intermediate state court of appeals set forth the following statement of facts in its opinion affirming petitioner's conviction.

R.R., the 14–year–old complainant, testified that she met the 59–year–old appellant through a classmate, D.R., who lived with appellant. R.R. and D.R. had been friends since third grade, and R.R. started spending time at appellant's apartment with D.R. when they were in the eighth grade. R.R. initially thought that appellant and D.R. were related because appellant called D.R. his granddaughter, and D.R. referred to appellant as her grandfather.

R.R. testified that D.R. had her own bedroom both at appellant's apartment and at D.R.'s mother's house. Most days, R.R. and D.R. would go to appellant's apartment after school. R.R. and D.R. would "chill and smoke" marihuana there. Appellant supplied marihuana and other drugs to D.R., which D.R. in turn shared with R.R. R.R. would occasionally spend the night with D.R., and they would alternate these sleepovers between appellant's place and D.R.'s mother's nearby house. Usually, when R.R. stayed with D.R., they would sleep in D.R.'s bedroom.

R.R. testified that, on January 2, 2012, she and D.R. were smoking in appellant's bedroom room [*sic*]. They were in appellant's room because the furniture had recently been removed from D.R.'s bedroom by a relative that moved out of the apartment, leaving only appellant's bed in the apartment. Appellant was there, and gave D.R. a drink containing "handlebars," a slang term for prescription Xanax. Appellant left for a few hours, during which time D.R. drank most of the drink, and gave the remainder to R.R. D.R. and R.R. then feel asleep on appellant's bed.

R.R. later woke with the weight of appellant lying on top of her. She testified that she was laying on her stomach, her pajama bottoms had been pulled down around her ankles, her socks pulled off, and she felt pain from appellant trying to force his penis into her vagina. When R.R. demanded to know what he was doing, appellant moved away and said, "I'm just playing with you." Although it was dark, R.R. saw appellant clearly, and she testified that he was wearing a blue shirt and no pants. After unsuccessfully trying to rouse D.R., R.R. went to an apartment upstairs where some of appellant's relatives live[d].

Upstairs, R.R. told appellant's niece, Dee, and appellant's granddaughter, Gabriale, what appellant had done and that she was unable to wake D.R. before she fled appellant's apartment. Dee and Gabriale then went down to appellant's apartment and Gabriale carried a sleeping D.R. back upstairs to their apartment. Dee or Gabriale called D.R.'s mother, Juanita, who sent her

boyfriend, Germane, to pick up D.R. and R.R. and take them back to Juanita's house.

R.R. testified that she did not call her mother to tell her what appellant had done because she was scared and did not want her mother to know that she was doing drugs. When R.R. returned home the following day, however, she told her mother what had happened. Her mother accompanied her to school and told the principal, who in turn contacted the police. R.R. was uncooperative when the first officer tried to interview her, but she eventually talked with a different officer and was then interviewed and examined at the Children's Assessment Center.

R.R. testified that, about one year later, D.R. and Gabriale pressured her to recant her accusation against appellant. Specifically, on January 28, 2013, D.R. wrote out a statement for R.R. and told R.R. to copy it in her own handwriting and sign it. R.R. did so, but testified at trial that she signed the statement only because she had been feeling pressure from appellant's friends and family to "make this go away." She reiterated at trial that despite her written recantation, her original accusations against appellate were true.

The State also presented testimony from the investigating police officer and a doctor from the Children's Assessment Center about their interviews with R.R. The director of therapy and psychological services from the Children's Assessment Center also testified about ways in which a sexual predator will groom children of different ages, and the characteristics of certain targets.

The defense called Gabriale, who also testified about the events of January 2, 2012. Gabriale and Dee had gone to see appellant at his apartment that evening, and had seen D.R. and R.R. sleeping in appellant's bed. While there, Gabriale expressed to Dee that she was concerned about the girls sleeping in appellant's bed given that appellant has a history as a sex offender.

According to Gabriale, it was only about five minutes after she and Dee returned upstairs to their apartment that R.R. appeared banging on their door. R.R. was visibly shaken and told them that appellant had tried to molest her. Gabriale noticed that R.R. no longer had on the socks Gabriale had seen her wearing when she saw R.R. in appellant's bed. R.R told Gabriale that R.R. [*sic*] had tried to penetrate her and that it was painful. R.R. told Gabriale that she did not want to call the police or her mother because she had been doing drugs, but that she was upset that D.R. was still passed out in appellant's

apartment. Gabriale testified about her and Dee going to retrieve D.R., carrying her upstairs, and then calling Juanita to have someone come pick up D.R. and R.R. Gabriale testified to seeing R.R. and D.R. at appellant's apartment the following day. Finally, Gabriale explained that after she and D.R. ran into R.R. about a year later, they took R.R. back to Gabriale's apartment to write a retraction letter. Gabriale admitted to "proofread[ing] it only," but denied that she or D.R. assisted R.R. in writing it.

Appellant testified on his own behalf. He testified to several prior convictions that led to a total of thirty-five years of incarceration, including a sixteen-year sentence for sexual assault. He explained that he had pleaded guilty to previous offenses because he was guilty, but that he was not guilty of the current charge.

Appellant testified that D.R.'s mom, Juanita, is his hospice provider. Among other ailments, he suffers from Hepatitis B and C, asthma, lung cancer, bone cancer, and diabetes. In his bedroom, he has oxygen tanks, a computer, and a headboard shelf that holds his medications. He denied allowing anyone to smoke anywhere in his apartment.

Appellant lets D.R. live with him because Juanita cannot control her behavior. R.R. spent a lot of time at appellant's apartment because she was friends with D.R., but appellant has made R.R. go home before. Appellant denied using any drugs that have not been properly prescribed, or giving drugs to anyone in his apartment.

Appellant testified that, on January 2, 2012, he got up about 6:30 a.m. and drove himself to Juanita's apartment, where he stayed until about 2:00 a.m. the next morning. When he returned to his apartment, he cleaned up his kitchen, and Gabriale and Dee came by to visit. After they left, he went in his room, took his medicine, and laid down. He saw D.R. in his bed, but testified that he did not see R.R. at all that day. He said that there was furniture in D.R.'s room on that date, but testified that he did not ask D.R. to move to her own bed because the air conditioner in his room was better. He also testified that some nights D.R. gets up in the middle of the night and comes to sleep in his room because she is scared or hears voices. He also denied owning a blue shirt.

Appellant dropped off to sleep and testified that he woke up when Dee came in and started shaking him. Dee told him "that girl" said somebody touched her. Appellant claims he did not know who "that girl" was, but that he

immediately grabbed his phone and called 911 to report it. By the time the police arrived, appellant had learned from Dee that it was R.R. that claimed she was touched. When the police came out, appellant told them that he had not seen a girl in his apartment that day except D.R., and that he wanted to file a complaint.

Appellant testified that he heard noise outside when Juanita's boyfriend picked up D.R. and R.R., so he went outside and saw R.R. and D.R. getting into the car. That is the only time he saw R.R. and he testified that she was wearing a school uniform, not pajama pants.

Appellant testified that he left his apartment again on the morning of January 3, 2012, returning home about 4:30 in the afternoon. When he arrived back at his apartment, D.R. and R.R. were there. Appellant testified that he "spoke to" R.R., who told him "I didn't say you did that." According to appellant, D.R. and R.R. stayed that night in D.R.'s bed in D.R.'s bedroom. Appellant went into his room and locked his door for the night. The next morning, appellant gave R.R. some of his pants to wear to school because she did not have a clean school uniform.

Sometime later, R.R.'s mother came to his apartment and confronted him. A few days after that, a police officer asked appellant to come in to be interviewed. Appellant took written statements by his brother and Juanita to give to the police. Appellant testified that he did not attempt to molest R.R. He claimed that his bedroom would have been too dark for R.R. to identify him, and that his medications prevent him from maintaining an erection.

Appellant was cross-examined about several inconsistencies between his trial testimony and earlier interviews with police. For example, contrary to his testimony at trial that he could not get an erection, he told police that his medication interfered with erections "sometimes," that he was sexual active, and that he had had sex one week before the alleged January 2, 2012 assault. Although D.R. and Juanita were subpoenaed and sworn in the first day of trial, they did not return to testify during appellant's case. Accordingly, after appellant testified, the trial court granted the defense a continuance until the following morning, and it issued attachments for D.R. and Juanita. It was eventually discovered that Juanita was out of town for work. D.R. was finally located and showed up at the courthouse several hours late where she was detained. After D.R. told the court that her mother was not available to come pick her up, the court then ordered her held in juvenile confinement so she could testify the next day. When D.R. was brought into court the following

morning to testify, she was in handcuffs and in a brown jumpsuit. At defense counsel's request and in front of the jury, the court noted that D.R. was not charged with a crime and ordered her handcuffs removed.

D.R. testified that she lived with appellant for a couple of years and that he never touched her inappropriately. Contrary to appellant's testimony, she testified that there was not a bed in her bedroom on January 2, 2012. She and R.R. smoked marihuana all that day in appellant's bedroom while appellant was gone. D.R. denied that appellant gave drugs to her, testifying instead that she helped herself to appellant's Xanax when he was not there, and that she gave one to R.R. at R.R.'s request on January 2, 2012. She could not recall if she fell asleep first or R.R. fell asleep first in appellant's bed that night. D.R. did not wake up until after Gabriale carried her upstairs. She thus testified that she did not have any firsthand knowledge of anything that happened to R.R. while she was asleep. D.R. testified that she and R.R. went to her mother's house later that night. She also testified that R.R. told everyone that appellant "raped me . . . . He tried to stick it in."

The next day, according to D.R., she and R.R. went back to appellant's apartment. She said R.R. did not want to go home and instead wanted to stay wherever D.R. was. D.R. and R.R. stayed at appellant's that night, and went to school the next morning. D.R. provided R.R. a pair of appellant's shorts to wear to school because R.R. did not have any clean clothes. D.R. testified that she was there at Gabriale's house in January 2013 when R.R. wrote out and signed the letter recanting her accusations against appellant. D.R. denied that she or Gabriale told R.R. what to put in the letter.

The defense rested, noting that it made a decision not to call Juanita and that it was withdrawing the motion for continuance based on the need to get her testimony.

*Cavitt v. State*, 507 S.W.3d at 239–43.

### *The Applicable Legal Standards*

*Habeas Review*

This petition is governed by the applicable provisions of the Antiterrorism and

Effective Death Penalty Act of 1996 (AEDPA). 28 U .S.C. § 2254. Under AEDPA, federal

habeas relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Harrington v. Richter*, 562 U.S. 86, 98–99 (2011); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from such a decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id*. at 411. "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102. As stated by the Supreme Court in *Richter*,

> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility

fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.

*Id.*, at 102–03 (emphasis added; internal citations omitted).

AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller–El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller–El*, 537 U.S. at 330–31.

*Summary Judgment*

In deciding a motion for summary judgment, the district court must determine whether the pleadings, discovery materials, and the summary judgment evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

While summary judgment rules apply with equal force in a section 2254 proceeding, the rules only apply to the extent that they do not conflict with the federal rules governing habeas proceedings. Therefore, section 2254(e)(1), which mandates that a state court's findings are to be presumed correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmovant. Accordingly, unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, the state court's findings must be accepted as correct by the federal habeas court. *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

### Insufficiency of the Evidence

Petitioner claims that the evidence is insufficient to support the conviction for sexual assault of a child. Respondent correctly argues that this claim has been procedurally defaulted and may not be considered by the Court.

A federal habeas petitioner may not obtain relief unless it appears that he has exhausted the remedies available in state court. 28 U.S.C. § 2254(b). State courts must be given the initial opportunity to address and if necessary correct alleged deprivations of federal constitutional rights. *Castille v. Peoples*, 489 U.S. 346, 349 (1989). For a claim to be exhausted, the state court system must have been apprised of the same facts and legal theory upon which the petitioner bases his federal assertions, *Picard v. Connor*, 404 U.S.

270, 276 (1971), and in a procedurally correct manner and context that will allow review of his claims solely on the merits. *Castille*, 489 U.S. at 351.

All grounds raised in a federal habeas petition must first be presented to the highest state court before being presented to a federal court. *Rose v. Lundy*, 455 U.S. 509, 518–19 (1982); *Deters v. Collins*, 985 F.2d 789, 795 (5th Cir. 1993). For exhaustion purposes, the Texas Court of Criminal Appeals is the highest state court with jurisdiction to review a petitioner's conviction. *See* TEX. CODE CRIM. PROC. art. 44.45. To proceed before that court, a petitioner must either file a petition for discretionary review or an application for a post-conviction writ of habeas corpus. TEX. R. APP. P. 68.1; TEX. CODE CRIM. PROC. art. 11.07.

Where a state prisoner seeks federal habeas relief on a claim that has not yet been presented to the state courts, the federal court may find the claim unexhausted and barred. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). Where a petitioner has failed to exhaust his state court remedies but where the state court to which he would be required to present his unexhausted claims would now find those claims barred, federal habeas review is precluded by the federal procedural default doctrine. *See id.*; *Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997).

Under Texas law, a sufficiency challenge may be raised only on direct appeal and may not be raised in a state habeas proceeding. *West v. Johnson*, 92 F.3d 1385, 1389 n.18 (5th Cir. 1996); *Clark v. Texas* 788 F.2d 309, 310 (5th Cir. 1986); *Ex parte Grigsby*, 137 S.W.3d

673, 674 (Tex. Crim. App. 2004). When the Texas Court of Criminal Appeals is silent on its reasoning for denying an insufficiency of the evidence claim raised for the first time on state habeas review, this Court may assume that the claim was denied because it is not cognizable on state collateral review. *Grigsby*, 137 S.W.3d at 674. In these circumstances, reliance on the procedural default by the state court is established and presents an adequate state procedural ground barring federal habeas review. *Ylst v. Nunnemaker*, 501 U.S. 797, 801–02 (1991). The Fifth Circuit Court of Appeals has also held that Texas's procedural rule barring consideration of record-based claims not raised on direct appeal in habeas proceedings is an adequate state ground for barring federal habeas review. *Dorsey v. Quarterman*, 494 F.3d 527, 532 (5th Cir. 2007).

Under such circumstances, a petitioner's claim is barred from federal habeas review unless he can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice in that he is actually innocent of the offense for which he was convicted. *Coleman*, 501 U.S. at 750. To establish actual innocence, a petitioner must support his allegations with new, reliable evidence that was not presented at trial and show that it was "more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)); *accord Finley v. Johnson*, 243 F.3d 215, 221 (5th Cir. 2001).

In the instant case, petitioner did not challenge the sufficiency of the evidence in the intermediate court of appeals proceedings. Although he did raise the claim on state collateral review, the Texas Court of Criminal Appeals denied the claim. *Ex parte Cavitt*, WR-5,496-15. In rejecting the claim, the state trial court on collateral review concluded that petitioner's "challenge to the sufficiency of the evidence is not cognizable in post-conviction habeas proceedings." *Id.* at 167. Consequently, the denial of habeas relief by the Texas Court of Criminal Appeals stands as a procedural dismissal under *Grigsby*.

Petitioner's challenge to the sufficiency of the evidence is procedurally defaulted and barred from consideration by this Court. Petitioner does not argue, much less demonstrate, cause and prejudice or fundamental miscarriage of justice, and his challenge to the sufficiency of the evidence must be dismissed. Even assuming the issue were properly before this Court, the Court has reviewed the record in the interest of justice and finds sufficient evidence to support petitioner's conviction. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

### Ineffective Assistance of Trial Counsel

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally

deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id*. at 687. The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id*. at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness

does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id*.

Petitioner claims that trial counsel was ineffective in the following instances.

*Failure to present testimony*

Petitioner argues that counsel was ineffective in failing to subpoena six witnesses to testify at trial. In rejecting this issue on direct appeal, the intermediate state court of appeals held as follows:

> Appellant next argues that counsel was ineffective for "failing to secure the presence of material witnesses to testify at the trial." Appellant's counsel's affidavit states that he did issue subpoenas for the first trial setting and the material witnesses appeared and were sworn to return at each setting.
>
> Appellant specifically complains about the lack of testimony by Dorothy, Ja'Shone, Jacquette, Clydell, Makayla, and Juanita. We address each in turn.
>
> *Dorothy*: Appellant argues that appellant's sister, Dorothy, informed appellant's counsel that Dee had "personally told her that they lied to the police, she was on drugs, and they made all of this up." Appellant claims Dee told Dorothy that she wanted to go change her statement to police, but she did not want to get into trouble.
>
> As we noted in rejecting appellant's newly-discovered-evidence argument, appellant's counsel states in his affidavit that he interviewed Dorothy and learned that she had "information about the testimony of" Dee. After "carefully questioning" Dorothy, appellant's counsel concluded that "her testimony would only be of value to impeach [Dee's] testimony." Dorothy attended the entire trial, but because Dee did not testify at trial counsel did not call Dorothy. He concluded that Dorothy's "testimony would not be valuable and would, in all likelihood, be severely limited because her information was solely based on hearsay."
>
> *Ja'Shone*: Appellant argues that his counsel should have called Ja'shone to testify about the contents of a written statement that she provided to appellant,

who in turn provided it to police. In that statement, she said that she and some friends were at appellant's house when R.R. got upset that appellant would not take her home. According to Ja'Shone, R.R. then "paired up" with appellant's "other enemies" to plot R.R.'s false allegation.

Appellant's counsel's affidavit explained that he was aware of Ja'Shone's statement, and that his investigator interviewed Ja'Shone. During that interview, Ja'Shone told him that "she had not only been present during the time of the offense, but that she was, in fact, in the bed with" R.R., D.R., and appellant. Counsel averred that, based on his conversation with other witnesses, he believed Ja'Shone's statement to be untruthful, so he could not use her testimony at trial.

*Jacquette*: Appellant argues that his counsel should have subpoenaed Jacquette (who was at Juanita's house when R.R. and D.R. arrived shortly after the sexual assault) to testify at trial. He relies upon two written statements Jacquette gave in which she states that R.R. told her that she did not know who had assaulted her and that she did not know what had happened. Jacquette also said that R.R. told her not to call the police about her being assaulted because she did not want to get into trouble with her mother.

Appellant's counsel's affidavit explained that he spoke to Juanita about Jacquette and knew that she was a potential witness. No one had an actual address for Jacquette, although Juanita told counsel that Jacquette was a heavy drug user and could generally be found on a particular street corner. Counsel's investigator attempted to locate her on that street corner and at other locations that they heard she frequented. Ultimately, based upon his information about her heavy drug use, counsel decided that "her credibility would be severely compromised and her testimony of little or limited value." Based on this determination, as well as his inability to locate her, counsel "decided to proceed without her."

*Clydell*: Appellant argues that counsel should have called appellant's brother, Clydell, to testify based upon a written statement he provided stating that, on December 29, 2011 (four days before the assault), "this young lady" was high on weed and telling people that she did not know who did this to her, and that Clydell saw her come back to appellant's apartment the next two nights.

Appellant's counsel states in his affidavit that he was aware of this statement and that Clydell was in jail at the time of trial. He "had concerns about putting

16

Clydell [ ] on the stand because he was not actually present for the events and his testimony would have certainly been severely impeached by his criminal history." Counsel was "very concerned that his criminal history would be imputed onto his brother, Raymond Cavitt, by the jury if he were to testify." Because of this, and because he was able to elicit much of the same information from Gabriale and D.R., counsel did not believe—on balance—that Clydell's testimony would be valuable.

*Makayla*: Appellant argues that his counsel should have called Makayla to testify since she gave a statement that R.R. was at appellant's house the day after the incident and wore a pair of appellant's pants. Makayla also stated, presumably referring to R.R., that "I know this person told me and other people one lie after" another. Finally, Makayla stated that she is the mother of one of the kids that stays at appellant's apartment and that her child and other children all say that appellant never "came on to them."

Appellant's counsel states he was aware of this statement, but "believed it was duplicative of other witnesses testimony" and neither he nor his investigator was ever able to locate her. He also stated that, in his judgment, Makayla's testimony "would have been substantially the same as that of" appellant, Gabriale, and D.R. with regard to R.R.'s location the day after the sexual assault.

*Juanita*: Appellant argues that Juanita, as appellant's hospice provider and D.R.'s mother, had important testimony that D.R. told her that R.R. was lying. Appellant also contends that Juanita would have testified that she told R.R. to call the police, but that R.R. did not want to. Finally, appellant states that Juanita could have testified that R.R. "kept changing her story."

Appellant's counsel's affidavit addresses his attempts to get Juanita to trial, and his ultimate decision to proceed without her:

> I considered Juanita an important witness in the case. She appeared at several trial settings and was sworn to return multiple times. Juanita and [D.R.] both appeared in court on Friday before the trial began on Monday and were sworn to return to testify Monday morning. Juanita assured me she would be present, so I was very surprised when she did not appear. I later learned that she had taken a trucking job and had left the

state and would not be back for an unknown period of time. Her daughter, [D.R.], likewise did not appear.

After the State rested I wanted to call Juanita and [D.R.] as witnesses, but they were not present, so I went forward with Gabriale and [appellant]. I then asked for, and was granted a short continuance in trial in order to locate them. The Court's process server made multiple phone calls and spoke with several witnesses and was finally able to contact [D.R.] through Gabriale. [D.R.] was ordered to be in court at 9:00 am, she did not appear, he contacted her again, she promised to appear at 12:00 pm. She did not appear. She was contacted yet again and promised to be present by 3:30 pm, but again did not appear. At that time I requested that the court enter a Writ of Attachment for both Juanita and [D.R.], which the court granted and entered. D.R. finally appeared at 5:00 pm after the jury was released for the day and was taken into custody pursuant to the Writ of Attachment. Juanita was contacted and informed that her daughter was in custody and that she needed to return to Houston immediately. She declined to do so and refused to give a timeline of when she would return. After [D.R.], [appellant] and Gabriale testified, I believed that all of the information I could have elicited from Juanita had been covered. I was concerned that the jury would blame [petitioner] if I were to ask for the case to be further delayed to get her into court and I was unable to give the court any kind of timeline when she might appear. I decided at that point not to call her. I explained this to the court on the record outside the presence of the jury and then rested my case. I believed [petitioner], [D.R.] and Gabriale had testified well and believed my case to be strong as it was.

In addition to explaining counsel's individual reason for not calling each of these witnesses, counsel's affidavit also explained that he was able to get into evidence that R.R. had recanted her allegations, and that counsel thoroughly cross-examined R.R. about her recanting and about inconsistencies between her testimony and that of other witnesses. He specifically emphasized to the jury that R.R. claims to have not returned to appellant's apartment in the days following the sexual assault, but other witnesses testified to the contrary.

The State makes several arguments about why the statements relied upon by appellant's motion for new trial in relation to these six potential witnesses above fall short of what is required to demonstrate that the witnesses would have been available to testify and how their testimony would be helpful. We need not reach the State's arguments about each of these statements because counsel provided the trial court with an explanation of his strategy and reasoning with regard to each of these potential witnesses. "In light of these considerations and the deference we must afford strategic decisions made by trial counsel," appellant has not demonstrated that the trial court abused its discretion in finding that counsel's decisions in this regard did not fall "below an objective standard of reasonableness."

*Cavitt*, 507 S.W.3d at 251–54 (citations omitted).

Moreover, in rejecting petitioner's ineffective assistance claims as to these individuals, the state trial court made the following findings of fact on collateral review:

6.   The applicant was represented in the primary case by [trial counsel].

7.   The Court finds that [trial counsel] provided an affidavit, it is credible and the facts asserted therein to be true.

\* \* \* \*

10.  The Court finds based on the credible affidavit of [trial counsel], trial counsel or trial counsel's investigator spoke to witnesses Dorothy Cavitt, Juanita Robicheaux, D. Robicheaux, Gabriale Cavitt, Jacquette Miller and Ja'shone Collins, before determining which witnesses should be called in furtherance of trial strategy.

11.  The Court finds [that] defense witness D. Robicheaux testified in [the] primary case.

12.  The Court finds that the Appellate Court held that the trial court did not abuse its discretion in finding that trial counsel did not fall below an objective standard of reasonableness in failing to call Juanita Robicheaux, and referenced trial counsel's explanation regarding the relative value of her testimony.

*Ex parte Cavitt*, p. 164.  The trial court concluded that petitioner did not meet his burden of proof under *Strickland*, and that he was provided reasonably effective trial counsel.  *Id*., pp. 166–67.  The Texas Court of Criminal Appeals relied on these findings of fact and conclusions of law in denying habeas relief.  *Ex parte Cavitt*, at cover.

To prevail on a claim under *Strickland*, a habeas petitioner must establish deficient performance and actual prejudice.  To meet his burden of proof in this instance, petitioner must rebut the strong presumption that trial counsel's decisions and actions were the product of reasonable trial strategy.  The state court found that counsel's performance was reasonable trial strategy in that counsel provided explanations of his strategy and reasoning as to each of these potential witnesses.  Petitioner's bald disagreements with those findings are insufficient to meet his burden of proof under AEDPA.

The state court rejected petitioner's claims of ineffective assistance and found that trial counsel was not ineffective.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record.  Respondent is entitled to summary judgment dismissal of this claim.

*Failure to advise*

Petitioner next claims that trial counsel failed to inform him adequately of the advantages and disadvantages of testifying at trial.  In rejecting petitioner's claim of ineffective assistance of counsel, the intermediate state court of appeals held as follows:

Appellant argues that the trial court should have granted his motion for new trial because defense counsel did not adequately inform him about the advantages and disadvantages of testifying. Specifically, he complains that he "has a criminal history including a previous sexual assault conviction among other serious convictions," but that counsel "failed to discuss with Appellant that his prior criminal history could be revealed to the jury if he decided to testify."

Trial counsel's affidavit, presented to the trial court by the State in response to appellant's motion for new trial, stated that, "from the onset, Raymond Cavitt made it clear to me that he wished to testify at trial" despite being repeatedly cautioned "about the dangers of testifying when he was charged with a sexual offense and had a prior conviction for a sexual offense, but he persisted." It further stated that counsel met with appellant several times specifically to discuss whether his testifying was prudent. At these meetings, counsel walked appellant through his direct examination questions, as well as what counsel anticipated cross-examination would entail. Finally, counsel's affidavit represents that he "specifically told [appellant] that his criminal history would, in all likelihood, be divulged to the jury if he testified." According to defense counsel, after discussing appellant's criminal history and what would be brought out, appellant "indicated a thorough understanding of the risk and still insisted on testifying."

The record also reflects that defense counsel, outside the presence of the jury, verified that appellant wished to testify. While being questioned on the record, appellant stated that he understood that he would be subjected to a rigorous cross-examination and that he still wanted to testify. The Court of Criminal Appeals has held that, in ruling on a motion for new trial, the trial court may resolve factual disputes on conflicting affidavits, especially when the parties and counsel have personally appeared before the trial court and the court is familiar with the historical facts. Counsel's affidavit contradicts appellant's assertion that counsel did not inform him about the advantages and disadvantages of testifying and the trial court could have credited counsel's assertion that appellant was informed. The trial court did not abuse its discretion in failing to grant a new trial on this point.

*Cavitt*, 507 S.W.3d at 249–50 (case citation omitted).

Moreover, in rejecting this claim as a basis for state habeas relief, the state trial court made the following findings of fact:

14.     The Court finds based on the credible affidavit of [trial counsel], trial counsel discussed with applicant the likelihood that his criminal history would be divulged to the jury if he testified.

15.     The Court finds based on the credible affidavit of [trial counsel], trial counsel believed the applicant indicated a thorough understanding of the risk and still insisted on testifying.

16.     The Court finds trial counsel admonished the applicant of the risks of testifying and confirmed that he desired to testify prior to his testimony.

*Ex parte Cavitt*, p. 165. The trial court concluded that petitioner did not meet his burden of proof under *Strickland*, and that he was provided reasonably effective trial counsel. *Id*., pp. 166–67. The Texas Court of Criminal Appeals relied on these findings of fact and conclusions of law in denying habeas relief. *Ex parte Cavitt*, at cover.

Petitioner argued that counsel did not inform him of certain material factors; in his affidavit, counsel testified that he did inform petitioner of the factors. The state court's resolution of this issue hinged on a credibility determination. It found trial counsel's affidavit testimony credible and impliedly rejected petitioner's counter assertions as not credible. *Ex parte Cavitt*, p. 164 ("The Court finds that [trial counsel] provided an affidavit, it is credible and the facts asserted therein to be true."). The state court's factual determinations, including credibility findings, are entitled to a presumption of correctness. *Miller v. Thaler*, 714 F.3d 897, 903 (5th Cir. 2013); *Richards v. Quarterman*, 566 F.3d 553, 563–64 (5th Cir. 2009). The presumption of correctness stands unless it is rebutted with

clear and convincing evidence to the contrary.  *Summers v. Dretke*, 431 F.3d 861, 872 (5th

Cir. 2005).  Because petitioner's bald disagreements with the state court's determinations are

insufficient to rebut the state court's express and implied findings, he fails to establish the

factual predicate for his claim.  Petitioner does not meet his burden of proof under the

AEDPA standard of review.

The state court rejected petitioner's claims of ineffective assistance and found that

trial counsel was not ineffective.  Petitioner fails to show that the state court's determination

was contrary to, or involved an unreasonable application of, *Strickland* or was an

unreasonable determination of the facts based on the evidence in the record.  Respondent is

entitled to summary judgment dismissal of this claim.

*Failure to object to expert testimony*

Petitioner next asserts that trial counsel should have objected to the expert testimony

of Lawrence Thompson presented by the State during the punishment phase of trial.

Specifically, he complains of counsel's failure to object to testimony regarding petitioner's

likelihood to reoffend.

In affirming petitioner's conviction on direct appeal, the intermediate state court of

appeals held as follows:

> Appellant next argues that his counsel should have objected to the testimony
> of Lawrence Thompson, the director of therapy and psychological services at
> the Harris County Children's Assessment Center.  During Thompson's
> testimony, the State approached the bench and told the court, "There was some
> testimony earlier that the defendant has a prior sexual case. And, so, I was
> going to ask the witness about patterns of behavior with regard to people who

reoffend in sexual abuse cases." Defense counsel responded that "he needs to make sure he couches it abuse as to what, an adult or a child or whatever [;] because if we have no report of any prior children, this is a child clinical psychologist." The State then elicited testimony that, "to the extent that there is an inappropriate sexual attraction to children, that inappropriate sexual attraction is there and is an issue in an ongoing way." Thompson further explained that, in the context of behaviors, it depends on the particular perpetrator whether they reoffend, but the attraction cannot be cured.

Appellant cites Texas Rule of Evidence 702 for the standards for admission of expert testimony, and notes that the trial court determination regarding experts' qualifications and the admissibility of expert testimony is reviewed for abuse of discretion. As the State points out in its brief, appellant does not state what allegedly renders Thompson's testimony inadmissible; indeed, appellant cites no authority demonstrating that this testimony was improper and that any such Rule 702 objection to Thompson's testimony would have been successful.

Appellant complains that his counsel should have objected to Thompson's testimony under Texas Rule of Evidence 403 because "any probative value was substantially outweighed by the danger of unfair prejudice." Again, however, appellant offers no argument or authority in support.

Appellant has not carried his burden of establishing that his counsel failed to make an objection, "that the trial judge would have committed error in overruling the objection," and that "the jury would have reached a different conclusion" in the absence of this testimony.

*Cavitt*, at 255–56 (citations omitted).

Petitioner re-urged this claim on state collateral review. In rejecting the claim, the

state trial court agreed with petitioner that "counsel did not object to State witness Dr.

Lawrence Thompson testifying about patterns of behavior in individuals who commit a

sexual second assault." *Ex parte Cavitt*, p. 165. The trial court concluded, however, that

petitioner "fails to show the Court would have committed reversible error in overruling an

objection to [Thompson's] testimony," and determined that petitioner established neither

deficient performance nor actual prejudice. *Id.*, p. 166. The Texas Court of Criminal Appeals relied on these findings of fact and conclusions of law in denying habeas relief. *Ex parte Cavitt*, at cover.

It is well established that trial counsel is not required to make futile objections or motions, and that the failure to raise meritless objections does not constitute deficient performance under *Strickland*. *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990). Petitioner did not establish that, had counsel raised an objection under state evidentiary rules, the trial court would have reversibly erred in overruling the objection. Consequently, petitioner established neither deficient performance nor actual prejudice under *Strickland*. Petitioner's bare disagreements with the state court's determinations, without more, are insufficient to meet his AEDPA burden of proof on federal habeas review.

The state court rejected petitioner's claims of ineffective assistance and found that trial counsel was not ineffective. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

*Eliciting testimony as to prior convictions*

Petitioner complains that trial counsel performed deficiently in eliciting, and not objecting to, testimony as to his prior convictions, and to details of his prior convictions. The

record shows that petitioner elected to testify at trial, and it is undisputed that he had a

lengthy criminal history, including prior sexual assaults.

In reviewing petitioner's claim, the intermediate state appellate court held as follows:

The State filed a notice of intent to use evidence of prior convictions and extraneous offenses, including (1) 1987 forgery conviction, (2) 1989 sexual assault conviction, (3) 1989 unlawfully carrying weapon conviction, (4) 2007 theft conviction, (5) 2007 robbery conviction, (6) 2007 sexual assault allegations, and (7) 2010 sexual assault allegations. During direct examination of appellant, appellant's counsel elicited testimony about three prior convictions for which he served prison sentences, namely, accessory to robbery in the early 1970s (served 18 years), forgery in 1986 (served 6 months before conviction was reversed [according to petitioner]), and sexual assault in 1989 (served 17 years). Appellant's counsel also elicited testimony that appellant pleaded guilty to the prior accessory-to-robbery charge and the sexual-assault charge because he was guilty in those cases, but that he insisted on a trial in this case because he is not guilty here.

Appellant acknowledges that eliciting testimony for a defendant as to his own prior convictions can be a matter of sound trial strategy if those prior convictions are admissible. He contends, however, that if prior convictions are inadmissible, there can be no reasonable trial strategy for introducing them. He argues that the convictions his counsel elicited his testimony about are too remote to be admissible and, thus, his counsel was ineffective by soliciting his testimony as to these convictions.

*   *   *   *

Although a conviction that is more than 10 years' old is deemed remote under Rule 609 (thereby placing a higher burden on the State to demonstrate admissibility), this Court has recognized that subsequent convictions for felonies or misdemeanors involving moral turpitude may remove any taint of remoteness from prior convictions. A misdemeanor theft conviction is a crime involving moral turpitude, and, therefore, it can be "tacked onto" remote convictions and cause them to be treated as not remote under Rule 609(a). The "tacking" of the intervening convictions causes a conviction older than 10 years to be treated as not remote.

*Cavitt*, 507 S.W.3d at 257–58 (cases citations, parentheses, quotation marks omitted).  The

court then determined that, under state evidentiary law, petitioner "cannot carry his burden

of proving his counsel was ineffective by eliciting testimony about his prior convictions," as

follows:

> [A]ppellant has not demonstrated that the trial court would have abused its
> discretion by refusing to exclude that testimony under Rule 609; nor has he
> shown that no reasonable counsel would have believed the sexual-assault
> conviction would ultimately be admitted and thus make the strategic decision
> to elicit testimony from appellant about it.
>
> As for the forgery conviction, we agree with the State that it is not at all clear
> from the record that appellant's counsel was attempting to elicit information
> about the forgery conviction, rather that the sexual-assault conviction, when
> he asked appellant about whether he "messed up again."  In any event, whether
> this testimony was accurate or not, appellant was permitted to testify that his
> forgery conviction had been reversed, lessening the taint before the jury.
>
> The accessory-to-robbery conviction is 40 years old, and appellant was
> released from confinement on that charge more than 20 years ago.  We do not
> know counsel's strategy, if any, in eliciting testimony about that conviction as
> opposed to others.   Nonetheless, heeding our responsibility "to be highly
> deferential to trial counsel and avoid the deleterious effects of hindsight," we
> are mindful that counsel made decisions about what prior convictions to pursue
> with good reason to believe that the State would admit evidence about so many
> prior convictions and extraneous bad acts that tacking would likely come into
> play to render this oldest conviction "not remote."  Given that counsel had
> reason to believe that his strategy for dealing with prior convictions needed to
> take into account the likelihood that several prior convictions would be
> admitted, his decision to elicit testimony about the accessory-to-robbery
> conviction was not so outside the zone reasonable disagreement as to render
> his assistance ineffective.

*Id.*, at 258–59 (cases citations, parentheses, quotation marks omitted).

Petitioner fared no better in complaining that counsel elicited otherwise inadmissible details about the convictions. In rejecting this claim on direct appeal, the intermediate state court of appeals held as follows:

> Relatedly, appellant argues that his counsel was ineffective for (1) eliciting inadmissible details about his prior offenses, and (2) failing to object to the State's eliciting details about appellant's prior offenses.
>
> During his direct examination, appellant's counsel elicited from him information about the length of his prior sentences for accessory to robbery, forgery, and sexual assault. During the State's cross-examination, appellant's counsel did not object when the State elicited testimony that appellant's prior sexual assault conviction involved an 18-year-old female complainant. Appellant contends that even though prior convictions may be admissible, these details about those convictions generally are not. Appellant has not, however, demonstrated that even if these details exceeded what is generally admissible, there is a "reasonable probability that the jury, in light of all the evidence presented, would have reached a different conclusion" absent that evidence.

*Cavitt*, at 259 (citations omitted).

In rejecting these claims of ineffective assistance, the state trial court on collateral review made the following relevant conclusions of law:

> 7.    The applicant fails to show that trial counsel was ineffective for eliciting testimony about the applicant's prior convictions.
>
> 8.    The applicant fails to show that counsel's performance was deficient or that but for his actions, the outcome of the proceedings would have been different.

*Ex parte Cavitt*, pp. 166–67 (case citations omitted). The Texas Court of Criminal Appeals expressly relied on the state trial court's findings of fact and conclusions of law in denying habeas relief. *Id.*, at cover.

In arguing this claim in the instant proceeding, petitioner reasserts arguments rejected by the state courts. The Court has reviewed the record and finds no fault with the state court's determination that petitioner failed to meet his burden of proof under *Strickland*. The state court on direct appeal clearly found that there were grounds for admitting the complained-of convictions, and that petitioner did not establish that, had counsel objected, the trial court would have reversibly erred in overruling the objection. Thus, petitioner did not establish deficient performance under *Strickland*. On state collateral review, the state trial court found that petitioner failed to establish actual prejudice under *Strickland*; that is, petitioner did not show that, but for counsel's alleged errors, there was a reasonable probability that the result of the trial would have been different. This latter finding applied both to evidence of the convictions and details of the convictions.

The state court rejected petitioner's claims of ineffective assistance and found that trial counsel was not ineffective. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

*Failure to inform of plea offer*

Petitioner claims that trial counsel failed to convey to him a plea offer of twenty-five years. In raising this claim, petitioner admits that he knew about the offer, but contends counsel was constitutionally obligated to convey the offer directly to him. Petitioner asserts

that, had counsel himself informed him of the offer, he would have then accepted it. Inexplicably, petitioner did not raise this issue in his 100-page motion for new trial, at a time during which he was represented by counsel and could have requested a response from trial counsel.

In subsequently rejecting the claim on state collateral review, the trial court found that petitioner "signed two Court Reset forms on February 5, 2013 and February 15, 2013 that included the State's plea offer of twenty-five (25) years confinement." *Ex parte Cavitt*, p. 165. The trial court concluded that petitioner failed to meet his burden of proof to show deficient performance and prejudice under *Strickland*, and that petitioner was afforded reasonably effective assistance of counsel. *Id.*, p. 166. The Texas Court of Criminal Appeals relied on these findings of fact and conclusions of law in denying habeas relief. *Id.*, at cover.

As a general rule, counsel has a duty to convey formal plea offers that may be favorable to the accused. *Missouri v. Frye*, 566 U.S. 134, 144 (2012). Where an ineffective assistance claim implicates such attorney error, a habeas petitioner must not only prove such deficient attorney conduct, but also establish prejudice:

> To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law. To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have

been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.

566 U.S. at 147 (case citations omitted).

As an initial observation, this Court notes that nothing in the record supports petitioner's bare assertion that counsel did not inform him of the plea offer. Without support in the record, a court cannot consider a habeas petitioner's mere assertions on a critical issue in his *pro se* petition to be of probative evidentiary value. *Ross v. Estelle*, 694 F.2d 1008, 1011–12 (5th Cir. 1983). In absence of such evidence, petitioner fails to demonstrate deficient performance under *Strickland*.

Nor does petitioner demonstrate that, but for counsel's purported failure to convey the offer, petitioner would have accepted the offer and pleaded guilty. Petitioner must demonstrate a reasonable probability he would have accepted the plea offer, that the plea would have been accepted by the trial court, and that it was a plea to a sentence of less prison time. *Missouri*, 566 U.S. at 147. This is not an instance where a defendant had no knowledge of a plea offer. Petitioner concedes that he was aware of the 25-year plea offer. Significantly missing from petitioner's story, however, is any mention of his having asked counsel about the offer, or telling counsel that he wanted to plead guilty. To the contrary, petitioner saw the offer on the reset forms and made no effort to discuss it with his attorney. These are not the actions of a defendant who claims he wanted to plead guilty and would have accepted a 25-year plea offer. Petitioner further fails to show a reasonable probability

that the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it.

In short, petitioner was aware of the plea offer notation appearing on the reset forms he signed. He presents no probative evidence in the record that counsel did not inform him of the offer or that he asked counsel about the plea offer notation. Nor does petitioner meet his burden of proof as to actual prejudice under the circumstances of this case.

The state court rejected petitioner's claims of ineffective assistance and found that trial counsel was not ineffective. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

*Failure to challenge the indictment*

Petitioner claims he received ineffective assistance when trial counsel failed to challenge the indictment. He specifically alleges that the State abandoned the first enhancement paragraph for forgery, and proceeded with the second paragraph for sexual assault. He complains that trial counsel nevertheless allowed the jurors to see the original indictment with the forgery-related paragraph that had been abandoned by the State.

In rejecting petitioner's claim on collateral review, the state court made the following relevant findings of fact:

22.    The Court finds that the indictment in the primary case contained two enhancement paragraphs.

23.   The Court finds that neither enhancement paragraph was read to the jury when the indictment was read at the commencement of trial.

24.   The Court finds that the State abandoned the first enhancement paragraph after guilt/innocence and proceeded with the second enhancement paragraph in punishment.

*Ex parte Cavitt*, pp. 165–66 (record citations omitted). The trial court concluded that petitioner failed to meet his burden of proof to show deficient performance and prejudice under *Strickland*, and that petitioner was afforded reasonably effective assistance of counsel. *Ex parte Cavitt*, p. 166. The Texas Court of Criminal Appeals relied on these findings of fact and conclusions of law in denying habeas relief. *Id*., at cover.

Petitioner's allegations against trial counsel are conclusory and unsupported. Nothing in the record shows that the jurors were given a copy of the original indictment or were told of the abandoned paragraph. Petitioner's speculation is insufficient to raise a genuine issue of material fact for purposes of summary judgment, and habeas relief is unwarranted.

The state court rejected petitioner's claims of ineffective assistance and found that trial counsel was not ineffective. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

*Cumulative error*

The state trial court rejected petitioner's claims for ineffective assistance of counsel, and this Court finds that petitioner has not satisfied his burden of proof under AEDPA. Consequently, there are no errors to cumulate, and petitioner's claim for cumulative error provides him no basis for federal habeas relief. *See Turner v. Quarterman*, 481 F.3d 292, 301 (5th Cir. 2007). "[I]neffective assistance of counsel cannot be created from the accumulation of acceptable decisions and actions." *United States v. Hall*, 455 F.3d 508, 520 (5th Cir. 2006); *see also Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir. 1987) (holding with respect to cumulation of meritless claims that "Twenty times zero equals zero.").

Habeas relief is unwarranted, and respondent is entitled to summary judgment dismissal of this claim.

### *Inadequate State Habeas Proceedings*

Petitioner complains throughout his response that he was denied due process and unable to obtain evidence to support his claims because the state habeas court refused to hold an oral evidentiary hearing. Complaints regarding the state habeas process do not give rise to grounds for federal habeas relief. *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995) (stating that an attack on state habeas proceedings is a challenge to a proceeding collateral to the detention and not a challenge to the detention itself). Petitioner's dissatisfaction with the state collateral review proceedings (as opposed to the state court's findings, conclusions, and determinations) affords him no basis for federal habeas relief.

### *Prosecutorial Misconduct*

Petitioner claims that the prosecution knowingly presented false, perjured, and misleading testimony during the motion for new trial hearing.

It is well established that a prosecution's knowing use of false testimony violates due process, *Giglio v. United States*, 405 U.S. 150, 154 (1972), and that a prosecutor has a duty to correct false or misleading testimony when it comes to his attention. *Napue v. Illinois*, 360 U.S. 264, 269 (1959).  It is petitioner's burden, however, to prove that the testimony was false or misleading, that the prosecution knew it, and that the testimony was material.

A claim of prosecutorial error or misconduct is actionable on federal habeas review only where the alleged misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process.  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  Due process is not violated unless the alleged conduct deprived the petitioner of his right to a fair trial.  A trial is fundamentally unfair if there is a reasonable probability that the verdict might have been different had the trial been properly conducted.  *Foy v. Donnelly*, 959 F.2d 1307, 1317 (5th Cir. 1992).

In rejecting this claim on collateral review, the state trial court concluded that petitioner's allegation of false testimony was conclusory and insufficient to warrant habeas relief.  *Ex parte Cavitt*, p. 166.  The Texas Court of Criminal Appeals relied on the trial court's findings of fact and conclusions of law in denying habeas relief.  *Id.*, at cover.

In attempting to show the existence of false and perjured testimony, petitioner directs the Court to contradictory and inconsistent statements and testimony in the record. These discrepancies warrant no relief, as conflicting or inconsistent testimony is insufficient to establish perjury. *Koch*, 907 F.2d at 531. Petitioner fails to establish that the subject testimony was actually false, that the prosecutor was actually aware of the alleged falseness, and that the testimony was material. His conclusory allegations of perjury are insufficient to raise a constitutional issue or preclude the granting of summary judgment. *See Ross*, 694 at 1012.

The state court rejected petitioner's claims of prosecutorial misconduct. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

### *Speedy Trial*

Petitioner claims he was denied his right to a speedy trial. In denying this claim on direct appeal, the intermediate state court of appeals held as follows:[1]

> In his second issue, appellant argues that the "trial court erred in denying Appellant's motion for a speedy trial." Appellant was charged and arrested in April 2012. On August 19, 2013, while represented by counsel, appellant filed a *pro se* "Writ of Habeas Courp. [*sic*] under 1107 VACCP for a Speedy Trial by Jury." In that filing, appellant asserts he has made four requests for the case to go to trial, and that the delay has caused him to lose contact with "one or

---

[1]The state court's references to "2014" throughout the opinion are apparently typographical errors. The trial took place in 2013. Because the state court referenced 2014 but correctly based its calculations on 2013 dates, the typographical errors are not material.

more of his witnesses." The only relief sought is a request that the "court grant this motion for speedy trial." He included a proposed order, which the court signed on August 20, 2014 after checking a box that the motion should be "denied." Trial began just over a month later, on September 26, 2014.

The State contends that the trial court's denial was proper, as a pre-trial writ is not the appropriate method of raising a speedy-trial claim. The State also argues that it is "unlikely that the appellant would have benefited from the trial court treating this document as a motion and granting it" because appellant asked only for a speedy trial, not a dismissal. Trial was had five weeks after the motion's denial.

The Sixth Amendment to the United States Constitution guarantees an accused the right to a speedy trial. "A speedy trial protects three interests of the defendant: freedom from oppressive pretrial incarceration, mitigation of the anxiety and concern accompanying public accusation, and avoidance of impairment to the accused's defense." The speedy-trial right attaches when the defendant is arrested or charged. We analyze speedy-trial claims under four factors articulated by the Supreme Court in *Barker v. Wingo*: 1) length of the delay, 2) reason for the delay, 3) assertion of the right, and 4) prejudice to the accused. While the State has the burden of justifying the length of delay, the defendant has the burden of proving the assertion of the right and showing prejudice. The defendant's burden of proof on the latter two factors "varies inversely" with the State's degree of culpability for the delay.

This case's pre-trial delay of almost 18 months is long enough to be presumptively prejudicial, thereby triggering the *Barker* test. When reviewing a trial court's denial of relief on a speedy-trial claim, "we presume that the trial judge resolved any disputed fact issues in the State's favor, and we defer to the implied findings of fact that the record supports." Once the *Barker* test is triggered, courts must analyze the speedy-trial claim by first weighing the strength of each of the *Barker* factors and then balancing their relative weights in light of "the conduct of both the prosecution and the defendant."

Here, there is no evidence that appellant asserted his right to a speedy trial before filing his writ of habeas corpus in August 2014, a full 16 months after his arrest and five weeks before trial. The record contains numerous case reset forms, but no motion by either party to reset the case. The docket sheet indicates that two months before appellant filed his August 2014 writ of habeas corpus seeking a speedy trial, the trial had been "reset by agreement of

both parties" from June 24, 2013 to September 9, 2014. The docket sheet also indicates that several of the previous resets were done at defendant's request. Finally, although appellant argues that he was prejudiced by the delay because he lost track of witnesses, he provided no evidence to the trial court is support of this assertion.

In sum, even if the trial court interpreted appellant's writ of habeas corpus as a motion for speedy trial, the record indicates that appellant did not assert his right to a speedy trial until five weeks before trial and just shortly after he had agreed to a trial resetting. Appellant did not present any evidence of prejudice to his defense, and the record evidence about who was responsible for the trial delay is at best neutral. Appellant has not demonstrated that his right to a speedy trial was violated. We overrule appellant's second issue.

*Cavitt*, 507 S.W.3d at 244–45 (footnotes, case citations omitted).

The intermediate state court of appeals correctly followed *Barker v. Wingo*, 407 U.S. 514, 530–32 (1972), and the court's factual analysis (after discounting the typographical errors regarding 2014) is supported by the record. Petitioner's disagreements with that analysis, and his complaints regarding lack of an evidentiary hearing at the state habeas level, are insufficient to warrant habeas relief under AEDPA.

The state court rejected petitioner's speedy trial claims. Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Barker* or was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of this claim.

### *Fettered Witness*

Petitioner complains that he was denied due process because a witness he requested, D.R., was brought into court in handcuffs.

In denying this ground for relief on direct appeal, the intermediate state court of appeals found as follows:

> Requiring a *defendant* to be tried in jail clothing infringes upon the fundamental right to a presumption of innocence. "But this same presumption of innocence does not apply to accomplice (or co-defendant) witnesses because they are not on trial." It is within the trial court's discretion to require a witness to appear in jail clothes and restraints if the circumstances warrant. If we find error in a trial court's ordering a witness to testify in jail attire, we must review for harm to determine if such error is reversible.
>
> Here, our review of the record does not support appellant's argument that D.R.'s credibility was harmed by her jail attire and that his defense was in turn harmed. D.R. was in handcuffs and jail attire because she ignored subpoenas to appear as a witness in court, and then did not have a ride home when she finally appeared late in the afternoon after the court had granted a continuance to secure her appearance. She was kept in juvenile detention overnight pursuant to a witness warrant, and brought to court the following morning. When appellant called her to the stand, appellant's counsel requested—in open court and in front of the jury—that D.R.'s handcuffs be removed. The trial court responded "She's not charged with anything. We can take those off her hands right now."
>
> During her testimony, D.R. was later asked about her the circumstances of her detention. She explained that she was in a brown jumpsuit, "[n]ot [because] I did anything wrong," but because she had been unable to get a ride to the courthouse. Specifically, she explained that her mother was out of town, and she had to wait for the person she is staying with to bring her after work. She testified that she got there as soon as she could.
>
> We agree with the State that D.R.'s credibility was likely undermined in other ways. She admitted to doing drugs and was combative during questioning, drawing repeated admonishments from the trial court to calm down. Most of D.R.'s testimony was cumulative. She testified that she had no first-hand knowledge of what had happened to R.R. because she was asleep.
>
> Given these facts, we are confident that any error in allowing D.R. to appear in jail garb was harmless to appellant. We overrule appellant's fourth issue.

*Cavitt*, 507 S.W.3d at 246 (case citations omitted, original emphasis).

In rejecting petitioner's claim on collateral review, the state habeas court made the following relevant findings of fact:

> 19. The Court finds that the trial court advised the jury that witness D. [R.] was not charged with a crime when she appeared in court handcuffed and in jail attire.

> 20. The Court finds that the First Court of Appeals overruled the applicant's point of error addressing the trial court allowing a witness to appear in a jail uniform.

*Ex parte Cavitt*, p. 165 (record citations omitted). The trial court also made the following relevant conclusions of law:

> 1. The applicant fails to demonstrate that trial counsel's representation fell below an objective standard of reasonableness or that with a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

> 2. The applicant fails to demonstrate that counsel provided representation that amounted to incompetence under prevailing professional norms.

> 3. The totality of the representation afforded the applicant was sufficient to protect his right to reasonably effective assistance of trial counsel.

> *    *    *    *

> 8. The applicant fails to show that counsel's performance was deficient or that but for his actions, the outcome of the proceedings would have been different.

*Ex parte Cavitt*, pp. 166–67 (case citations and quotation marks omitted). The Texas Court of Criminal Appeals relied on these findings of fact and conclusions of law in denying habeas relief. *Id.*, at cover.

In presenting this claim for federal habeas relief, petitioner does little more than reassert his state court arguments and disagree with the state court's determinations. This is insufficient to meet his burden of proof under the AEDPA standard of review, and does not preclude the granting of respondent's motion for summary judgment. The Supreme Court has not addressed the constitutional parameters surrounding a witness's appearance in jail garb. Nor has petitioner established that his own credibility and defense were unconstitutionally harmed, in light of the explanations given the jury for the witness's appearance. Moreover, this Court agrees with the state court's findings that the witness's own demeanor and testimony caused greater harm to her credibility than any harm caused by her attire.

The state court rejected petitioner's due process claims. Petitioner fails to show that the state court's determinations were contrary to, or involved an unreasonable application of, federal law or were unreasonable determinations of the facts based on the evidence in the record. Respondent is entitled to summary judgment dismissal of these claims.

### *Conclusion*

Respondent's motion for summary judgment (Docket Entry No. 33) is GRANTED and this lawsuit is DISMISSED WITH PREJUDICE. Any and all pending motions are DENIED AS MOOT. A certificate of appealability is DENIED.

Signed at Houston, Texas on February 16, 2018.

_____
Gray H. Miller
United States District Judge